# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

TIMOTHY ACTON, Administrator
of the Estate of MATTHEW ACTON,

        Plaintiff,                  Case No. 2:08-cv-315
                                            JUDGE GREGORY L. FROST
     v.                                     Magistrate Judge Terence P. Kemp

EXCEL INDUSTRIES, INC.,

        Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (Doc. # 50) and Defendant's motion for summary judgment on Plaintiff's punitive damages claim (Doc. # 51). For the reasons that follow, the Court **DENIES** both motions.

### I. Background

The following facts were taken from admissible evidence submitted by the parties and are uncontroverted.

On October 4, 2007, as part of his employment with Westchester Golf Course, Matthew Acton was mowing near the twelfth green when the lawn tractor he was operating rolled over into a pond pinning Acton in the water underneath it. Acton was discovered by a coworker and freed. Acton remained in a coma for four days and then died as a result of an anoxic brain injury that he sustained as a result of this occurrence.

The lawn tractor that Acton was operating at the time of the occurrence was a 2006 Hustler Super Z 66-inch cut, zero turn radius, model # 928028 ("Super Z") manufactured by Defendant Excel Industries, Inc., d/b/a/ Hustler Turf Equipment, Inc. ("Defendant" or "Excel"). Mark Novotny purchased the Super Z in 2006 on behalf of the Westchester Golf Course.

The Super Z was not equipped with a rollover protection structure ("ROPS") at the time of the occurrence that caused Acton's death. The Super Z offered a ROPS as optional equipment. Novotny declined to purchase the ROPS and signed a waiver stating that he was offered the ROPS and that he declined to purchase it. The waiver indicated that death or serious injury could occur in the event of a rollover.

Defendant knew when it sold the Super Z that it could rollover in normal use. Defendant had knowledge that it was highly probable that a roll over would result in death or serious injury to a lawn tractor operator. (Defendant's Product Quality Manager, Homer Gattis, testified that Excel and other manufacturers collected data for the Consumer Product Safety Commission showing that 80% of the documented lawn tractor rollovers resulted in operator death.).

Defendant offered the ROPS to consumers for $695. The cost to produce the ROPS was between $200 and $250. During the relevant time period, less than 1% of customers purchased the ROPS option for the Super Z.

Defendant marketed and advertised the Super Z as capable of operating on steep slopes without a safety frame. Advertising brochures produced by Excel made the following representations regarding the Super Z: "up to 15 mph, it's great on slopes"; "Awesome on slopes"; "The Hustler Zs and Super Zs will perform like a mountain goat on the most intimidating inclines"; "with its wide stance and low, low profile—the Super Z clings goatlike to slopes, stable and sure, as flat-out productive as on the level straightaways."

On April 7, 2008, the Administrator of Acton's estate, Plaintiff Timothy Acton, filed this product liability action against Defendant based upon diversity jurisdiction. Plaintiff alleges violations of Ohio's product liability statute, Ohio Rev. Code § 2307 *et seq*., based upon alleged

defective product design and inadequate warning and instruction.[1]  Plaintiff also filed a claim for relief for punitive damages.  *See* Ohio Rev. Code § 2307.80.

On March 30, 2009, Defendant filed its motion for summary judgment.  (Doc. # 50.)  On April 23, 2009, Plaintiff filed his memorandum in opposition to Defendant's motion (Doc. # 59) and on April 30, 2009, Defendant filed its reply memorandum in support of its motion (Doc. # 60).

On March 30, 2009, Defendant also filed its motion for summary judgment on Plaintiff's punitive damages claim (Doc. # 51) and Plaintiff filed his memorandum in opposition to that motion on April 22, 2009 (Doc. # 58).  Defendant filed its reply in support of its motion for summary judgment on Plaintiff's punitive damages claim on May 4, 2009.  (Doc. # 62.)

## II.  Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact[.]"  Fed. R. Civ. P. 56(c).  In making this determination, the evidence must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable

---

[1] Plaintiff also alleged a negligence claim; however, Plaintiff withdrew the claim in his memorandum in opposition to Defendant's motion for summary judgment indicating that the claim had been abrogated as part of the most recent amendment to Ohio's product liability statute.  (Doc. # 59 at 6.)

inferences in favor of that party. *Id.* at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations." *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover*, 284 F. Supp.2d at 862 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c). The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

4

### III. Analysis

Defendant moves for summary judgment on both Plaintiff's product liability claims for relief and moves separately for summary judgment on Plaintiff's punitive damages claim.

**A. Defendant's Motion for Summary Judgment on the Product Liability Claims**

To support its request for summary judgment, Defendant argues that:

> When analyzing the allegations within Plaintiff's Complaint, it is clear that the entire basis for his lawsuit rests in the allegations that "[t]he lawn tractor was designed, manufactured, and sold without a [ROPS]." Plaintiff's Complaint, ¶ 13.

(Doc. # 50 at 3.) Defendant further argues that this allegation has been shown to be false by Novotny's testimony, which leads to the "inescapable" conclusion that the Super Z was designed, manufactured and distributed "with a ROPS" and sold "with an available ROPS." Thus, Defendant concludes:

> Mark Novotny's testimony, . . . clearly sets forth the incontrovertible evidence that he, the purchaser of the machine, was offered ROPS when the machine was originally purchased and that he willingly and deliberately declined this device. Thus, Excel can have no active liability in this matter for not designing, manufacturing, and selling the machine with an available ROPS when the testimony so clearly establishes that this is simply not the case. As a consequence thereof, since Plaintiff's entire cause of action against Excel rests upon allegations which are clearly not true, Excel is entitled to final summary judgment regarding Plaintiff's claims.
>
> Liability ceased against Excel as a matter of law when Mr. Novotny voluntarily and with fully informed knowledge declined to purchase the machine with a ROPS. Liability, if any, would rest with the person/entity who declined to purchase ROPS with the subject lawnmower, not with Excel who designed, manufactured, distributed, and sold the machine *with* a ROPS.

(Doc. # 50 at 3-4) (emphasis in original). Defendant reiterates this argument in its reply memorandum.

The Court finds that Defendant's arguments and conclusions are not well taken.

5

First, the Court disagrees with Defendant's assessment of the meaning of the allegations made by Plaintiff. Plaintiff alleges that the Super Z was designed, manufactured, distributed, and sold without a ROPS as standard equipment, *i.e.*, with a ROPS offered only as optional equipment. Novotny's testimony does not prove this allegation false. Indeed, Novotny's testimony is consistent with this allegation, *i.e.*, he was offered a ROPS as optional equipment on the Super Z.

Second, the Court cannot ascertain whether manufacturing the Super Z with an optional ROPS and/or Novotny's declination of that option has any bearing on Defendant's liability because Defendant utterly fails to set forth the standards necessary to sustain a products liability action under Ohio law. Plaintiff has alleged causes of action for defective product design in violation of Ohio Rev. Code § 2307.75 and for inadequate warning and instruction in violation of Ohio Rev. Code § 2307.76. Defendant simply does not address this statute.

With regard to Plaintiff's claim of defective product design, Ohio law provides him with two theories upon which to recover: (1) the consumer expectation standard; and (2) the risk-benefit standard. *Perkins v. Wilkinson Sword, Inc.*, 83 Ohio St.3d 507, 508 (1998); *Carroll v. Alliant Techsystems, Inc.*, No. 06AP-519, 2006 Ohio App. LEXIS 5506, at *8 (Ohio Ct. App. Oct. 24, 2006). In *Perkins*, the Supreme Court of Ohio explained that these standards are not mutually exclusive, but instead constitute a single, two-pronged test for determining whether a product is defectively designed. *Carroll*, 2006 Ohio App. LEXIS 5506, at *8.

> "[U]nder the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria, that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design." *Cremeans*, [*v. Internl. Harvester Co.*, 6 Ohio St.3d 232, syllabus (1983)]. The risk-benefit analysis is proper " 'when the product [can] be made safer through an alternative design, and not when the

> product is by its nature dangerous.' " *Perkins* [*v. Wilkinson Sword, Inc.*, 83 Ohio St. 3d 507, 510 (1998)], quoting *Caveny v. Raven Arms Co.*, 665 F. Supp. 530, 532-533 (S.D. Ohio 1987).

*Id.* at *n.3.

> Under the consumer expectation test, "a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Cremeans*, at syllabus. When utilizing the consumer expectation test, a product may be proven to be in a defective condition if: (1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; (2) the claimed defect was present when the product left the manufacturer; and (3) the claimed defect proximately caused the claimed injuries. *State Farm* [*Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 7 (1988)].

*Id.* at *9.

In the case *sub judice*, Defendant has failed to meet its Rule 56(c) burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact as to Plaintiff's design defect cause of action. *See Celotex Corp.*, 477 U.S. at 323. Defendant makes no argument and identifies no evidence to support whether the design of the Super Z "is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design." *Cremeans*, 6 Ohio St.3d at syllabus. In other words, Defendant makes no argument that the Super Z is not in a defective condition by evaluating whether the benefits of the Super Z without a standard ROPS outweighs the risks inherent in such a design. Defendant simply does not address the risk-benefit test.

Likewise, Defendant makes no argument nor identifies any evidence that would support whether the Super Z as sold performed "as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *State Farm*, 37 Ohio St.3d at 7. Like the risk-benefit test, Defendant fails to addresses the consumer expectation test.

> With regard to Plaintiff's second claim for relief:
>
> In a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public.

*Crislip v. TCH Liquidating Co.*, 52 Ohio St. 3d 251, 257 (1990) ("the important factors for the jury to consider were whether the defendant knew or should have known of the danger and whether the warning allowed the consumer to use the product safely").

In the instant action, Defendant has failed to meet its Rule 56(c) burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact as to Plaintiff's failure to warn cause of action. *See Celotex Corp.*, 477 U.S. at 323. Defendant makes no argument as to whether the warning that was given was adequate nor as to whether the precautions it took in providing a written warning was one that a reasonable person would have taken in presenting the Super Z to the public.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, *Adickes*, 398 U.S. at 159, and drawing all reasonable inferences in his favor, *Anderson*, 477 U.S. at 255, the Court concludes that Defendant is not entitled to summary judgment on Plaintiff's defective design claim nor on his failure to adequately warn claim.

**B. Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim**

Defendant moves for summary judgment on Plaintiff's punitive damages claim for relief, first arguing that Plaintiff has failed to sufficiently plead punitive damages and, second, that there is no issue of material fact as to whether Plaintiff can establish by clear and convincing evidence that he is entitled to punitive damages. Neither argument is well taken.

### 1. Pleading Punitive Damages

The Federal Rules of Civil Procedure require only notice pleading, *i.e.*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Defendant argues, however, that "Ohio specifically requires the pleading of fraud, actual malice, oppression, or insult, which the Plaintiff has not done. Ohio Revised Code, § 2315.21" (Doc. # 51 at 3.) Defendant is incorrect.

The statute to which Defendant cites, Ohio Rev. Code §2315.21, provides for punitive damages in negligence claims. It is Ohio Rev. Code § 2307.80 that provides the vehicle to recover punitive damages in a products liability case. That statute provides:

> (A) Subject to divisions (C) and (D) of this section, punitive or exemplary damages shall not be awarded against a manufacturer or supplier in question in connection with a product liability claim unless the claimant establishes, by clear and convincing evidence, that harm for which the claimant is entitled to recover compensatory damages in accordance with section 2307.73 or 2307.78 of the Revised Code was the result of misconduct of the manufacturer or supplier in question that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question. The fact by itself that a product is defective does not establish a flagrant disregard of the safety of persons who might be harmed by that product.

Ohio Rev. Code § 2307.80.

Neither the punitive damages statute, § 2307.80, nor Ohio case law stand for the proposition that the actual word "malice" must be specifically pled. In fact, the Ohio appellate courts have previously addressed the issue of whether a claim for punitive damages must include the term "malice" in the complaint and have determined that it need not. *See Brookridge Party Center, Inc. v. Fisher Foods, Inc.*, 12 Ohio App. 3d 130, 131 (Ohio App.1984) ("Punitive damages need not be specially pleaded or claimed. They are recoverable if the evidence warrants their allowance.") (footnote and citations omitted); *Lambert v. Shearer*, 84 Ohio App.

9

3d 266, 273 (Ohio App. 10 Dist. 1992) (same).

In the instant action, Plaintiff pleaded entitlement to punitive damages through allegations that Excel's actions were "reckless, willful, and wanton." Complaint ¶ 30. The Court concludes that Plaintiff has sufficiently pled a claim for relief for punitive damages.

### 2. Entitlement to Punitive Damages

Defendant contends that it is entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff has not presented sufficient evidence that Defendant acted with flagrant or conscious disregard for Acton's safety. Defendant argues that because it was aware of these potential harms, it offered a ROPS as optional equipment on the Super Z and required a waiver to be signed indicating the dangers of declining to purchase a ROPS. Further, Defendant argues that because there are no industry or government standards requiring the addition of ROPS on a lawn tractor of the size and weight of the Super Z, there can be no liability for punitive damages in the instant case. Defendant's arguments are not well taken.

First, Ohio law does not require the violation of a safety standard or a government regulation before punitive damages may be imposed.

Second, the Court finds that the evidence offered by Plaintiff raises a genuine issue of material fact as to whether there is clear and convincing evidence that Defendant acted with flagrant or conscious disregard of the safety of those who would use the Super Z. Based on Plaintiff's evidence that management at Excel knew of the risks of rollover associated with the Super Z, that it was aware of other incidents where individuals had died as a result of rollovers of zero turn radius lawnmowers, that over 80% of rollovers resulted in the death of the operator, that the Super Z was marketed and advertised as capable of operating on steep slopes, and that it

knew that fewer than 1% of its customers purchased the optional ROPS.

Moreover, the deposition testimony of Tom Berry, an independent mechanical engineer who designed, tested, and certified ROPS for various lawn tractors including Excel's, in 2000 informed Defendant that ROPS should be standard equipment on their lawn tractors. (*See* Doc. # 58, Ex. R at 7-9, 23-25.) Berry testified that he informed Excel that the use of ROPS with a seatbelt is almost 100%, without a seatbelt over 95%, effective in preventing death and serious injuries to persons involved in tractor rollovers. *Id.* at 20. Berry further testified that Excel responded that it was offering the ROPS only as optional equipment because "that's what marketing was telling them." *Id.* at 24-25.

Based on the evidence before the Court, and viewing that evidence in the light most favorable to Plaintiff, *Adickes*, 398 U.S. at 159, Plaintiff has met his burden of raising a genuine issue of material fact as to whether he is entitled to punitive damages in this action and, therefore, that issue must be submitted to a jury for determination. *See Anderson*, 477 U.S. at 248.

### IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendant's motion for summary judgment (Doc. # 50) and **DENIES** Defendant's motion for summary judgment on Plaintiff's punitive damages claim (Doc. # 51).

**IT IS SO ORDERED**.

           /s/ Gregory L. Frost
           **GREGORY L. FROST**
           **UNITED STATES DISTRICT JUDGE**